**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION**

| | | |
|---|---|---|
| City of Montgomery, Ohio | : | CASE NO.: 1:13-CV-609 |
| Plaintiff, | : | |
| vs. | : | JUDGE MICHAEL R. BARRETT |
| Our Family Home, Inc., et al., | : | |
| Defendants. | : | |

---

**PLAINTIFF, CITY OF MONTGOMERY, OHIO'S REPLY MEMORANDUM**
**TO DEFENDANTS' MOTION FOR PRELIMINARY INJUNCTION**

---

Plaintiff, City of Montgomery, Ohio (hereinafter "City"), submits the following in response to Defendants', Our Family Home Operating Company, LLC and OFH Properties, LLC's (collectively "OFH"), Motion for Preliminary Injunction:

**<u>PRELIMINARY STATEMENT:</u>**

Before starting this case history it is important to note two points. First, the City has never denied OFH's application for zoning permission to operate an Adult Family Home within the City. As acknowledged in Plaintiff's Verified Counterclaim, the Defendants' initial application was continued at their request and later tabled by the Planning Commission while the City sought declaratory relief in the Hamilton County Court of Common Pleas (Verified Counterclaim ¶'s 82 and 84). Secondly, the waters Our Family Home seeks to navigate to secure its approval are not as clear as OFH would contend. On that basis, the City simply stepped back

from the zoning process and requested the assistance of the Hamilton County Court of Common Pleas under the authority of Chapter 2721 of the Ohio Revised Code. It was the City's hope to have the Court's guidance through the process. Defendants, whoever they may be, have now asked that the case be resolved in Federal Court, which is their right. But, the muddy waters are no less clear. There is still a conflicting statute on the one hand qualifying OFH as a permitted use, but at the same time permitting the City to set conditions [*See,* R.C. § 5119.22 (E)]. There is case law in part defining the process and declaring housing for the disabled as a permitted use, yet recognizing that a local community may restrict such use. *See*, *Ardmore, Inc. v. City of Akron, Ohio*, 90-CV-1083, 1990 US Dist. LEXIS 20806 (Northern Dist. Ohio, August 2, 1990). Finally, Defendants would contend that requiring a conditionally permitted use process is itself discriminatory, yet in other cases arising from this District and Circuit, the process of requiring a conditional use permit is not facially discriminatory, but discrimination must be determined from how the conditions are applied. *See, Get Back up, Inc. v. City of Detroit, et al.*, 2013 U.S. Dist. LEXIS 91816 (6th Cir. Decided 7-1-2013); *Means v. City of Dayton*, 111 F. Supp. 969, 2000 U.S. Dist. LEXIS 18526 (Southern Dist. Ohio 2000).

In simple summary, if the parties have a real and justiciable controversy justifying declaratory relief, as Defendants readily admit in their Answer to Plaintiff's Complaint for Declaratory Relief (Answer ¶ 17), how can the issue of discrimination against OFH be so clear that Defendants should prevail on a request for Injunctive Relief? The purpose of injunctive relief is to maintain the status quo. Nothing could be more appropriate in this case than leaving the status quo to be able to respect the rights of surrounding residents until questions can be answered in the underlying action for declaratory relief.

## **FACTUAL BACKGROUND:**

Our Family Home, through Vice-President Mark Damante, contacted the City in May 2013 inquiring about opening an Adult Family Home in a single-family residence they were looking to acquire on Bramblewood Circle in the City. An Adult Family Home as noted in Defendants' brief is a conditionally permitted use in the City. The City's process for a conditional use permit encourages an applicant to meet informally with the City before submitting an application. Montgomery Zoning Code § 150.1602 reads:

> The applicant is encouraged to meet with the Planning Commission or Zoning Administrator, or his designee, prior to submitting an application for a conditional use permit. The purpose of this meeting is to discuss early and informally with the applicant the purpose and effect of the zoning regulations and the criteria and standards contained within. MZC § 150.1602 – *Exhibit A attached.*

Instead of this informal meeting which was offered to Our Family Home, they submitted an application for a conditional use permit on June 7, 2013 (A copy of the application is identified as Plaintiff's Exhibit B attached to the City's original Complaint filed in the Hamilton County Court of Common Pleas, which has been removed to this Court). The matter was scheduled for hearing on July 1, 2013. Before the hearing the applicant closed on the purchase and acquired the property June 27, 2013. As noted in Defendants' Verified Counterclaim, prior to the hearing before the Planning Commission the applicant requested a continuance intending to informally meet with residents in the area to answer any questions concerning their proposed use. When considerable opposition grew to the intended use, given the uncertainties in the law as outlined herein, the City elected to bring an action for Declaratory Judgment seeking the Court's guidance.

3

**MEMORANDUM OF SUPPORT:**

The City's confusion leading to the request for judicial guidance is not whether the law permits limitations under its Code based upon a person's disability, as that is very clearly prohibited. The confusion occurs because the Ohio statute under which Defendant contends they are entitled to a zoning permit recognizes the City's right to impose conditions upon the application for such permit. The Defendants contend that a conditional use process is prohibited as a matter of law and they are entitled to a zoning permit without question and without conditions.

The confusing trail starts with R.C. § 5119.22(E)(1) which states:

> Any person may operate a residential facility[1] providing accommodations and personal care services for one to five unrelated persons and licensed as a residential facility that meets the criteria specified in Division (A)(9)(b) of this section as a permitted use in any residential district or zone, including any single-family residential district or zone of any political subdivision. Such facilities may be required to comply with area, height, yard and architectural compatibility requirements that are uniformly imposed on all single-family residences within the district or zone.

However, Section (E)(3) of R.C. § 5119.22 reads as follows:

> (3)     Divisions (E)(1) and (2) of this section do not affect any right of a political subdivision to permit a person to operate a residential facility licensed under this section in a single-family residential district or zone **under conditions established by the political subdivision.** (*emphasis added*).

This statute begs the question that if a residential facility is a permitted use, what conditions can the City impose upon the use in a single-family residential district and why is it

---

[1] For the purposes of this Motion and Reply Memorandum, the City will stipulate that the proposed use qualifies as a residential facility under Ohio law.

then not a conditionally permitted use? Obviously any conditions which are imposed cannot be discriminatory, but more obviously the Ohio legislature recognized that something more than simply regulating the area, height, yard and architectural compatibility requirements [permitted under R.C. § 5119.22 (E)(1)] is allowable since those regulations already were preserved in subsection (1).

While Defendants cite *Ardmore, Inc. v. City of Akron, Ohio*, 90-CV-1083, 1990 US Dist. LEXIS 20806 (Northern Dist. Ohio, August 2, 1990) as support for their position that a conditional use permitting process is invalid, *Ardmore* does not completely clear the waters. The court concluded in *Ardmore*:

> In light of recent legislative enactments that afford expansive protection to the handicap in a wide variety of areas, municipalities should tailor narrowly any kind of health and safety regulation imposed on the handicap. *Id.* at 16.

If a residential facility is a permitted use by statute, but the City is permitted to impose conditions [R.C. § 5119.22(E)(3)], and if a conditionally permitted use process is inappropriate (*Ardmore, supra.*), but any conditions or restrictions the City imposes must be narrowly tailored to prevent discrimination against handicap persons (*Ardmore, supra.*), how does the City work through an application for a residential facility meeting its responsibilities to its residents without unfairly discriminating against a protected applicant?

While *Ardmore* has not been specifically overruled, more recent cases, also involving claims under the Fair Housing Act or Fair Housing Amendments Act, have involved conditionally permitted uses without finding the process itself to be prohibited. The Courts have not found that a conditionally permitted use process is facially discriminatory. Instead the

Courts have focused upon the conditions as imposed, not the process itself, to determine if discrimination has occurred.

In *Get Back Up, Inc., supra.* the Court did not invalidate the conditionally permitted use process and, in fact, the Court found that the conditionally permitted use process in that case was not facially invalid, but the conditions as applied would need to be reviewed to determine if discrimination occurred.  The Court considered the fact that other uses in a residential district were conditionally permitted unrelated to the status of being handicapped so one could not claim that a conditionally permitted use process *per se* was discriminatory.  *See,* also *Means v. City of Dayton*, 111 F. Supp. 969, 2000 U.S. Dist. LEXIS 18526 (Southern Dist. Ohio 2000).

There are numerous other uses conditionally permitted in the "A" Single Family District within the City of Montgomery as noted in MZC § 151.1003 attached.  All of these uses require the applicant to undergo the conditionally permitted use process, and most if not all of the other uses are unrelated to being disabled.  As in *Get Back Up, Inc., supra.* the process in and of itself is not discriminatory as it is applied to use in a residential district which is more institutional than familial.  So, Defendants cannot contend that the process is flawed and must be restrained.

If the process itself is not flawed, are Defendants entitled to a preliminary injunction?

Without arguing whether the enactment of R.C. § 5119.22(E)(1) is a violation of the principles of home rule, given that zoning is one of the closely guarded police powers of a local jurisdiction, is it appropriate to grant a preliminary injunction within this uncertain area of the law?  The purpose of a preliminary injunction is to preserve the status quo to protect the relative positions of both parties until a trial on the merits can be held.  *University of Texas v. Camenisch* (1981), 451 U.S. 390, 68 L. Ed2d 175, 101 S. Ct. 1830.   If the Court pushes forward to grant Defendants' requested relief requiring the City to grant their zoning permit without conditions,

we have ignored the initial questions which can only be answered at trial: (1) What *conditions* does the State permit the City to impose by R.C. § 5119.22(E)(3); and (2) What is the process for establishing those conditions?

The City does not dispute that the factors the Court is to weigh in determining whether a preliminary injunction is appropriate are the following:

(1)    The likelihood that the parties seeking the preliminary injunction will succeed on the merits of the claim.

(2)    Whether the party seeking the injunction will suffer irreparable harm without the grant of extraordinary relief.

(3)    Probability that granting the injunction will cause substantial harm to others.

(4)    Whether the public interest is advanced by the issuance of the injunction. *See, Six Clinics Holding Corporation II v. Cafcomp Systems, Inc.*, 119 Fed.3d 393, 1997 U.S. App. LEXIS 17812 (6th Circuit, 1997).

The City does not dispute that the Court's responsibility is to balance these issues in determining whether or not this extraordinary interim remedy is appropriate. However, a balancing test must also consider the fundamental question if the law is unclear, how likely is it that the party seeking a preliminary injunction will succeed on the merits of the claim? In that same vein, what is the nature of injunctive relief which is appropriate at this stage if Defendant will ultimately prevail as argued? Is the Court to strike down each of the conditions articulated in the Montgomery Zoning Code as Defendants would contend and immediately grant a zoning permit? If so, it would ignore the City's right under R.C. § 5119.22(E)(3) to articulate conditions under which the use will be permitted. If the Court's responsibility is to strike down the Montgomery Code but hear evidence upon what conditions may be appropriate without

discriminating against the applicant, it would be consistent with preserving the public's interest, but granting a preliminary injunction at this stage, without a full hearing to air the issues concerning the conditions, would cause substantial harm to the residents as the use would be permitted with no opportunity to impose the conditions which can only be articulated at a trial on the merits. If the nature of the relief is to enjoin the City from imposing the conditional use process on the applicant, but recognize the City's rights to set conditions under R.C. § 5119.22(E)(3), then should the Court remand the matter to the City Council to legislatively set the conditions?

Based upon Defendants' argument, one would conclude that they believe that no conditions are appropriate and their use is permitted as of right so long as it is appropriately licensed by the State of Ohio. Their position finds no support under R.C. § 5119.22(E)(3) and is also inconsistent with the safe harbor provision of the Fair Housing Act and Fair Housing Amendments Act, which allows a local community to enact a safeguard without being discriminatory if necessary for the health and safety of others or if potential tenancy would cause substantial physical damage to the property of others. *42 USC § 3604(f)(9)*.

Stepping back to look at some of the issues presented before the Court, the City must readily admit that some of its conditions articulated in MZC § 151.2007(g) are unenforceable and likely as applied would be discriminatory, but the City has never denied OFH its permit nor applied these conditions to their application to deny their permit.

Looking at the individual conditions set forth in the Montgomery Code, the City agrees that MZC § 151.2007(g)(2) would violate HIPAA unrelated to whether or not it is discriminatory against disabled persons. Other regulations from MZC § 151.2007(g) do not come into play whether they are valid or not. As an example, the City's restrictions which prevent excessive

concentration by requiring 1,000 foot separation between these similar uses [Subsection (g)(7)] is not a prohibition to Defendants operation of Our Family Home on Bramblewood as it was admitted that there was no similar use within the designated protected zone. (See Plaintiff's Complaint Exhibit B). Further, why is it not fair for the City to ask whether or not the applicant is licensed, which in essence is the requirement of subsection MZC § 151.2007(g)(8)? If licensed by the State, which licensing requires twenty-four hour care and the requirement for supervision, then MZC § 151.2007(g)(3) is moot. Is it not also appropriate for the City to ask whether or not this will be the permanent residence for the OFH clients to be sure that this is not an adult daycare, which is not a permitted activity under either the Code or State law?

Can the City restrict signage? The City permits signage in residential districts consistent with MZC § 151.3010, attached, and if in fact this is a residential use and not an institutional use, the City's restriction is doing nothing more in MZC § 151.2007(g)(5) than reaffirming MZC § 151.3010. A signage restriction is not discriminatory if it applies to other non-disabled, non-protected users.

While the Defendants have questioned the appropriateness of these conditions, none of these conditions have been applied to deny applicant's permit. With more information gathered either at trial or upon remand to the City, appropriate safety related conditions can and should be considered before the use is permitted by injunctive relief.


**CONCLUSION:**

The focus in this litigation at this stage should not be whether or not a preliminary injunction should be issued. There are too many questions which require more than a hearing upon this Motion. A zoning decision which is contrary to the planned use of the Montgomery

community will cause substantial harm to other residents in the area, a balancing factor weighing against a preliminary injunction under the *Six Clinics Holding* standard. As a for-profit organization it is difficult to know how the Defendants will suffer irreparable harm, although it is conceded that a long line of cases arising from the Fair Housing Act would indicate that any threatened discriminatory act will be presumed to cause irreparable harm. In the end, is the public interest being advanced by the issuance of a preliminary injunction or is the public interest appropriately advanced by not punishing the City for having the audacity to seek the Court's guidance in the declaratory judgment proceeding, but rather laying the facts and the law before the Court and obtaining the guidance the City sought in the first place?

Respectfully submitted,

/s/ Terrence M. Donnellon
Terrence M. Donnellon   (0017869)
Director of Law
City of Montgomery, Ohio
Donnellon, Donnellon & Miller
A Legal Professional Association
9079 Montgomery Road
Cincinnati, Ohio 45242
Telephone: (513) 891-7087
Facsimile: (513) 891-7125
tmd@donnellonlaw.com

## CERTIFICATE OF SERVICE

The undersigned certifies that on September 27, 2013, the foregoing was sent via U.S. mail, postage prepaid and e-mail to the following and all other parties and/or counsel identified within the Court's e-filing system:

Daniel J. Buckley, Esquire
Vorys, Sater, Seymour and Pease, LLP
301 East Fourth Street, Suite 3500
Great American Tower
Cincinnati, OH 45202
*Trial Attorney for Defendants*

and sent via U.S. mail, postage prepaid to the following:

Office of the Attorney General
State Office Tower
30 East Broad Street, 14th Floor
Columbus, Ohio 43215

/s/  Terrence M. Donnellon
Terrence M. Donnellon   (0017869)

# CHAPTER 150.16
## Conditional Use Permits and Similar Uses

| | | | | |
|---|---|---|---|---|
| 150.1601 | Purpose. | | 150.1607 | Action by Planning Commission. |
| 150.1602 | Pre-application meeting encouraged. | | 150.1608 | Action by Council. |
| 150.1603 | Submission of application. | | 150.1609 | Terms and duration of conditional use permit. |
| 150.1604 | Conditional use application procedures. | | 150.1610 | Reapplication. |
| 150.1605 | Review of conditional use permit application. | | 150.1611 | Similar uses. |
| 150.1606 | Public hearing and notice by Planning Commission. | | | |

**§ 150.1601      PURPOSE.**

When a proposed use is permitted in a zoning district as a conditional use, as set forth in the district regulations, a conditional use permit is required and the application for such conditional use permit shall be submitted and reviewed according to the guidelines outlined in this chapter.

**§ 150.1602      PREAPPLICATION MEETING ENCOURAGED.**

The applicant is encouraged to meet with the Planning Commission or Zoning Administrator, or his designee, prior to submitting an application for a conditional use permit. The purpose of this meeting is to discuss early and informally with the applicant the purpose and effect of these zoning regulations and the criteria and standards contained within. However, no action shall be taken at such a meeting and no discussions, opinion, suggestions, or recommendations of the Planning Commission or Zoning Administrator shall be relied upon by the applicant to indicate subsequent approval or disapproval of the application.

**§ 150.1603      SUBMISSION OF APPLICATION.**

The owner, or agent thereof, of property for which such conditional use is proposed shall file with the Zoning Administrator an application for a

conditional use permit on the form provided for such purposes, which shall be accompanied by payment of the required fee. The application for a conditional use permit shall disclose all uses proposed for the development, their location, extent, and characteristics and shall include the following:

(a)    A development plan and associated documentation when required in Section 150.1402.

(b)    A list of all property owners lying within 300 feet of any part of the property on which the conditional use is proposed and the president of the neighborhood association where the conditional use is located, including their addresses and permanent parcel number, as shown on the current tax duplicate in the Office of the Hamilton County Treasurer.

(c)    A statement of need for the proposed use, its location, and magnitude.

(d)    A summary report identifying and evaluating the consequences and effects of the proposed use on the surrounding properties and the neighborhood at large.

(e)    A statement indicating how the negative effects of the proposed use will be mitigated and how all the conditions for approval set forth in Chapter 151.20 for the proposed use will be met.

**EXHIBIT**

**A**

**Montgomery Zoning Code Update**          **Effective Date:  July 21, 2010**

### § 151.1003    SCHEDULE OF PERMITTED USES.

| Land Use Category | "A" Single-Family District | "B" Single-Family District | "C" Single and Two-Family District | "D-2" Multi-Family District | "D-3" Multi-Family District |
|---|---|---|---|---|---|
| **A.   Residential** | | | | | |
| 1.   Single-family detached dwellings | P | P | P | P | P |
| 2.   Single-family detached cluster dwellings | | | | P | P |
| 3.   Single-family attached dwellings | | | P | P | P |
| 4.   Two-family dwellings | | | P | P | P |
| 5.   Multi-family dwellings | | | | P | P |
| 6.   Family home for handicapped persons (4 to 8 persons) | C | C | C | C | C |
| 7.   Group home for handicapped persons (at least 9 persons) | | | | C | C |
| 8.   Keeping of rabbits or chicken/hens for personal use (6 or fewer chickens/hens) | P | P | P | | |
| **B.   Community Facilities** | | | | | |
| 1.   Places of worship | C | C | C | C | C |
| 2.   Cemeteries | C | C | C | C | C |
| 3.   Day care within churches, schools | C | C | C | C | C |
| 4.   Day care center (child and adult) | | | | C | C |
| 5.   Electric substations | C | C | C | C | C |
| 6.   Libraries, museums | C | C | C | C | C |
| 7.   Retirement villages | | | | C | C |
| 8.   Schools, public & private | C | C | C | C | C |

P = Permitted Use
C = Conditional Use

| Land Use Category | "A" Single-Family District | "B" Single-Family District | "C" Single and Two-Family District | "D-2" Multi-Family District | "D-3" Multi-Family District |
|---|---|---|---|---|---|
| 9.   Public offices | C | C | C | C | C |
| 10.  Public safety facilities | C | C | C | C | C |
| C.   Entertainment – Recreation | | | | | |
| 1.   Public and private parks | C | C | C | C | C |
| 2.   Golf courses | C | C | C | C | C |
| 3.   Clubs, lodges or other assembly halls | | | | C | C |
| D.   Other | | | | | |
| Wireless Telecommunications Facilities | See Chapter 151.36 | | | | |
| P = Permitted Use C = Conditional Use | | | | | |

§ 151.1004    LOT REQUIREMENTS FOR STANDARD SINGLE-FAMILY DETACHED DWELLINGS AND TWO-FAMILY DWELLINGS.

Lots created for single-family detached dwellings in any residential district and two-family dwellings where permitted shall comply with the area and dimension requirements specified in Schedule 151.1004 for the district in which the lot is located.

(a)    Minimum Lot Area.  The area of a lot that may be used for the purposes of a dwelling unit shall not be less than the area set forth in Schedule 151.1004 except as otherwise permitted in subsection (d) below.

(b)    Minimum Lot Width.  The width of a lot, measured at the building line, shall not be less than the width set forth in Schedule 151.1004.

(c)    Minimum Lot Frontage.  The minimum lot frontage shall be the same as the minimum lot width except for lots on cul-de-sacs as set forth in Schedule 151.1004 and as otherwise permitted in subsection (d) below.

(d)    Exceptions for Panhandle Lots.

(1)    The minimum lot frontage required for panhandle lots shall be 20 feet measured at the public street right-of-way which provides access to the lot.

(2)    Panhandle lots can only be created, however, when the lot area is 150% of the permitted minimum lot area of the district or 100% of the area of the front lot of which the panhandle lot is located immediately behind, whichever is larger in size. If the lot is located behind more than one lot, the new lot must be 150% of the